IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DAWN MCPHEETERS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:22-cv-00207-SRB |
| THE CHILDREN'S MERCY HOSPITAL, | ) ) ) |
| Serve: Registered Agent, Ltd.<br>2345 Grand Blvd., Ste. 2800<br>Kansas City, MO 64108 | ) ) ) ) |
| Defendant. | ) ) |

## AMENDED COMPLAINT

Plaintiff Dawn McPheeters, for her Amended Complaint against Defendant The Children's Mercy Hospital ("Children's Mercy" or "Defendant"), pursuant to Fed. R. Civ. P. 15(1)(1), states and alleges as follows:

### INTRODUCTION

1. This is an action for damages and other relief on behalf of Plaintiff Dawn McPheeters, a former employee of Children's Mercy.

2. Beginning in the summer of 2020, Plaintiff a registered nurse and nurse practitioner, suffered retaliatory blowback after reporting her legitimate concern that one of her supervising physicians was engaged in fraudulent and unlawful billing practices and endangering patient safety, in violation of both Federal and Missouri law. *See* Counts I and II, for retaliation in violation of the Federal False Claims Act and the Missouri Whistleblower Protection Act.

3. Over the course of several months, Defendant's retaliation became so outrageous that Plaintiff developed severe anxiety, stress, and depression, and was ultimately forced to take a period of leave from work to manage her condition under care of a physician.

1

4. When Plaintiff returned to work, she requested, among other things, that she be allowed to work from home one day per week, just as several other employees in her position were permitted to do. Defendant effectively made it impossible for her to return, denying Plaintiff's requested accommodation without justification and only offering her the "opportunity" to work a reduced schedule with reduced pay instead. *See* Courts III and IV, disability discrimination and failure to accommodate under the Americans with Disabilities Act and the Missouri Human Rights Act.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff is a resident of the State of Missouri and a former employee of Children's Mercy.

6. Defendant is a nonprofit corporation organized and existing under the laws of the State of Missouri with its principal place of business in Kansas City, Missouri.

7. This Court has subject matter jurisdiction over this action, which includes claims brought under the Federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, pursuant to 28 U.S.C. § 1331.

8. This Court has supplemental subject matter jurisdiction over Plaintiff's claims brought under the Missouri Whistleblower Protection Act, R.S. Mo. § 285.575, and the Missouri Human Rights Act, R.S. Mo. § 213.010, *et seq.*, pursuant to 28 U.S.C. § 1367, because her Missouri claims are so related to those claims within the Court's original jurisdiction that they form part of the same case or controversy.

9. This Court has personal jurisdiction over Defendant because it conducts business within the State of Missouri, and pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process and provides that an action under the False Claims Act "may be brought in any

judicial district in which the defendant…can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."

10. This action properly lies in the Western District of Missouri pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this judicial district. Venue in the Western District of Missouri is also authorized pursuant to 31 U.S.C. § 3730(h)(2).

## BACKGROUND FACTS

11. At all times relevant to this Complaint, Plaintiff was employed by Children's Mercy as a Registered Nurse and Nurse Practitioner in the Fetal Health Center.

12. In June 2020, Plaintiff learned that one of the physicians in her department, Dr. Shilpa Babbar was engaged in unlawful and fraudulent billing practices.

13. Specifically, Dr. Babbar billed work that Plaintiff had performed as if she (Dr. Babbar) had actually performed the work.

14. Defendant billed work performed by Dr. Babbar at a higher rate than work performed by Plaintiff.

15. Consequently, Dr. Babbar's billing practice caused Defendant to overbill patients and their insurers for certain services that were in fact performed by Plaintiff.

16. On information and belief, some portion of the unlawfully overbilled work was billed to federal government programs, including Medicaid (Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v) and the Children's Health Insurance Program (42 U.S.C. §§ 1397aa-1397mm) ("CHIP").

17. Plaintiff was concerned about Dr. Babbar's unlawful billing practice.

18. Plaintiff also witnessed Dr. Babbar refuse to see medically complex patients and delegate tasks to subordinates, including Plaintiff, that were outside those subordinates' respective scopes of practice.

19. For example, Dr. Babbar refused to see a pregnant patient with a choroid plexus cyst (a cyst in the brain), and a patient with an echogenic focus (a spot on a fetal heart), instead delegating those tasks to Plaintiff.

20. Additionally, Dr. Babbar instructed Plaintiff to manager insulin levels in at least one pregnant patient who had Type 1 Diabetes, which was something that Plaintiff understood to be outside the scope of her license.

21. Plaintiff knew that treatment and counseling of patients with such conditions were outside her scope of practice, and for the health and safety of the patient, she believed that such patients should be managed by a specialist such as Dr. Babbar.

22. Plaintiff's concerns regarding patient safety are reflected in both state and federal regulation of hospitals such as Children's Mercy, including 19 C.S.R. § 30-20.013, which incorporates Medicare Conditions of Participation as licensing requirements for Missouri hospitals, and 42 C.F.R. § 482.13(c), which gives patients the right to receive care in a safe setting as a condition of hospital participation in Medicare.

23. Plaintiff reported Dr. Babbar's unlawful billing practices and unsafe patient care practices to Melanie Foltz, the Director of the Fetal Health Center at Children's Mercy.

24. Foltz did nothing to address Plaintiff's concerns.

25. Following Foltz' inaction, Plaintiff reported her concerns to Raimonda King, the Administrative Director of the Birth Center & Children's Services at AdventHealth Shawnee Mission, who oversaw the facility where Plaintiff worked on a contract basis for Children's Mercy.

4

26. King recognized the seriousness of Plaintiff's complaints, and engaged Dr. Timothy Bennett, Plaintiff's collaborating physician and the Medical Director of the Fetal Health Center at Children's Mercy, on the issue.

27. At a meeting in early July 2020, Foltz raised Plaintiff's concerns with Dr. Babbar.

28. Following this meeting, Foltz told Plaintiff that she had tried to keep Plaintiff's name out of the conversation, but that Dr. Babbar likely knew that Plaintiff was the one who complained.

29. Almost immediately after this July 2020 meeting, Dr. Babbar began retaliating against Plaintiff.

30. Specifically, Dr. Babbar repeatedly and inexcusably denied Plaintiff administrative time to complete her notes and other reports.

31. Additionally, Dr. Babbar unjustifiably disparaged Plaintiff's qualifications for a leadership committee.

32. Plaintiff reported Dr. Babbar's retaliatory actions to Foltz.

33. Foltz scheduled meetings with both Plaintiff and Dr. Babbar for the express purpose of addressing Plaintiff's concerns with the retaliation, but Dr. Babbar refused to attend those meetings.

34. Dr. Babbar's ongoing retaliation, and Children's Mercy's failure to take meaningful action to protect Plaintiff from that retaliation, caused Plaintiff's to develop increasing levels of anxiety and depression.

35. In March 2021, Plaintiff applied for and took 12 weeks of leave under the Family Medical Leave Act ("FMLA") to address and manage her stress, anxiety, and depression.

5

36. When Plaintiff returned to work, she requested that she be permitted to work from home one day per week to complete her administrative time, that her contact with Dr. Babbar be limited, and that she be permitted time off when needed to attend therapist appointments.

37. Defendant responded that Plaintiff could not complete her administrative time at home, but that her schedule could be shortened to four days per week, and that she could complete her administrative time in the office for two hours each day.

38. Defendant denied Plaintiff's requests to limit her direct work with Dr. Babbar and to grant her time off for therapy appointments.

39. Plaintiff viewed Defendant's proposed accommodation as unreasonable because a a reduced schedule would have been accompanied by a reduction in pay.

40. Defendant allows many other employees to complete their administrative time at home.

41. Prior to her complaints about Dr. Babbar and her need for an accommodation, Plaintiff herself had been allowed to complete her administrative time at home.

42. Defendant never explained to Plaintiff why it would not accommodate her through a procedure that was already permitted for other employees, and had previously been permitted for her.

43. Based on Defendant's failure to adequately accommodate her disability or to protect her from Dr. Babbar's ongoing retaliation, Plaintiff was forced to resign her position.

44. ***Exhaustion of Administrative Remedies.*** On or about September 14, 2021, Plaintiff concurrently filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"), outlining her claims of disability discrimination and retaliation.

45. On December 29, 2021, the EEOC issued Plaintiff a Notice of Right to Sue.

46. On March 29, 2022, the MCHR issued Plaintiff a Notice of Right to Sue.

**COUNT I – RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT**

47. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

48. Dr. Babbar's practice of submitting bills to Medicaid and/or CHIP for work performed by Plaintiff as if they were performed by Dr. Babbar herself violates the False Claims Act, in that Dr. Babbar knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a).

49. Plaintiff, as an employee of Defendant Children's Mercy who worked closely with Dr. Babbar, was aware of Dr. Babbar's unlawful and fraudulent conduct in submitting false claims for reimbursement to healthcare programs such as Medicaid and CHIP, or had a reasonable belief that Dr. Babbar was engaged in such unlawful and fraudulent conduct, as described more fully above.

50. Defendant is vicariously liable for the actions of its employees and agents, including Dr. Babbar.

51. Plaintiff engaged in lawful, protected conduct when she reported Defendant's unlawful billing practice to Foltz and King.

52. Defendant and its agents, including Dr. Babbar, knew about Plaintiff's report.

53. Immediately after Dr. Babbar learned of Plaintiff's protected activity, she began retaliating against Plaintiff by denying her administrative time and disparaging her qualifications for a leadership committee.

54. Dr. Babbar's retaliatory hostility caused Plaintiff to develop increasing anxiety, stress, and depression, ultimately causing her to need to take medically recommended leave.

7

55. Following Plaintiff's return from leave, Defendant denied Plaintiff's request for a reasonable accommodation, as set out above.

56. The timing and circumstances of Dr. Babbar's hostile and retaliatory actions, as well as the denial of a reasonable accommodation, create an inference that Defendant's action in this regard was motivated solely by Plaintiff's report.

57. Defendant constructively discharged Plaintiff through its retaliatory actions, creating such a hostile work environment that no reasonable person could have been expected to remain in Plaintiff's position.

58. As a direct and proximate result of Defendant's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

59. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related non-economic damages for which she is entitled to recovery from Defendant as damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant Children's Mercy in the maximum amount allowed to her pursuant to 20 U.S.C. § 3730(h)(2), including reinstatement with the same seniority status that Plaintiff would have had but for the retaliation, two (2) times the amount of her back pay, an amount fair and reasonable to compensate her for her emotional distress, her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II – MISSOURI WHISTLEBLOWER PROTECTION ACT

60. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

61. Dr. Babbar's practice of billing work Plaintiff performed as if that work had been done by Dr. Babbar constitutes serious misconduct in violation of the clear mandate of the public policy set out in the False Claims Act.

62. At the time she reported Dr. Babbar's unlawful activity to Foltz and King, Plaintiff was a protected person under the Missouri Whistleblower Protection Act, R.S. Mo. § 285.575.2(4).

63. Defendant constructively discharged Plaintiff from her employment by retaliating against her as set out above, making her working conditions so intolerable to a reasonable person that she was forced to resign.

64. On information and belief, Defendant intended for its retaliatory actions to cause Plaintiff's resignation.

65. Defendant did or should have reasonably foreseen that its retaliatory actions would cause Plaintiff's resignation.

66. The timing and circumstances of Plaintiff's constructive discharge create an inference that Defendant's retaliatory actions were motivated by a purpose to retaliate against Plaintiff for her report.

67. Defendant's unlawful retaliatory acts have harmed Plaintiff in a number of ways compensable by the Missouri Whistleblower Protection Act, such that she is entitled to an award of back pay, reasonable attorneys' fees, costs and expenses.

68. Defendant's retaliatory acts and constructive discharge of Plaintiff's employment were outrageous due to Defendant's evil motive or reckless indifference to the protected rights of Plaintiff, such that Plaintiff should be awarded liquidated damages in an amount equal to double any award of back pay.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant Children's Mercy in the maximum amount allowed to her pursuant to R.S. Mo. § 285.575, including back pay, liquidated damages in an amount equal to double any award of back pay, attorneys' fees, costs, and expenses, and such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III – ADA FAILURE TO ACCOMMODATE

69. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

70. Plaintiff is a qualified individual with a disability under the ADA, in that she met the legitimate skill, experience, education, and other requirements of her position with Children's Mercy and could perform the essential functions of her position with a reasonable accommodation.

71. Children's Mercy is a covered employer under the ADA.

72. Plaintiff requested an accommodation of allowing her to complete her administrative time at home one day per week, limiting her contact with Dr. Babbar, and permitting her time off as needed to attend therapist appointments.

73. Defendant denied Plaintiff's requests to limit her contact with Dr. Babbar or to permit her time off to attend therapist appointments.

74. Defendant rejected Plaintiff's requested accommodation of allowing her to continue working full-time while completing her administrative time at home one day per week.

75. As an alternative accommodation, Defendant offered Plaintiff the ability to work a reduced schedule, with reduced pay, but to complete her administrative time at the hospital.

76. Defendant failed to engage in the interactive process as required by the ADA, in that it failed to provide Plaintiff with a reasonable accommodation for her disability or to explain

10

why her requested accommodation would be unreasonable, even as other employees were permitted to complete administrative time at home.

77. Defendant failure to accommodate Plaintiff's disability and to engage in the interactive process with her to find a reasonable accommodation is a violation of the ADA, such that Plaintiff is entitled to an award of back pay and benefits, compensatory damages, front pay and benefits, attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant Children's Mercy on Count III of her Complaint, and issue her an award of back pay and benefits, compensatory damages, front pay and benefits, attorneys' fees, costs, and expenses incurred in bringing her claim, and such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV – DISABILITY DISCRIMINATION (MHRA)

78. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

79. At the time she requested an accommodation, Plaintiff was disabled under the MHRA in that she had anxiety and depression that substantially limited a major life activity, but with which she could perform her job with a reasonable accommodation.

80. Defendant is a covered employer under the MHRA.

81. Plaintiff requested an accommodation of allowing her to complete her administrative time at home one day per week, limiting her contact with Dr. Babbar, and permitting her time off as needed to attend therapist appointments.

82. Defendant denied Plaintiff's requests to limit her contact with Dr. Babbar or to permit her time off to attend therapist appointments.

83. Defendant rejected Plaintiff's requested accommodation of allowing her to continue working full-time while completing her administrative time at home one day per week.

84. As an alternative accommodation, Defendant offered Plaintiff the ability to work a reduced schedule, with reduced pay, but to complete her administrative time at the hospital.

85. Defendant failed to engage in the interactive process as required by the MHRA, in that it failed to provide Plaintiff with a reasonable accommodation for her disability or to explain why her requested accommodation would be unreasonable, even as other employees were permitted to complete administrative time at home.

86. Defendant's failure to accommodate Plaintiff's disability and to engage in the interactive process with her to find a reasonable accommodation is a violation of the MHRA, such that Plaintiff is entitled to an award of damages.

87. Plaintiff was constructively discharged from her employment at Children's Mercy, as set out above.

88. Defendant's discriminatory and unlawful action has caused Plaintiff to suffer loss of wages and benefits, such that she is entitled to an award of back pay under the MHRA.

89. Defendant's discriminatory and unlawful conduct exacerbated Plaintiff's stress, anxiety, and depression, and caused her to suffer garden variety emotional distress, such that she is entitled to an award of compensatory damages.

90. Defendant's discriminatory conduct is a type that must be deterred and punished through an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant Children's Mercy on Count IV of her Complaint, and issue her an award of back pay and benefits, compensatory damages, punitive damages, front pay and benefits, attorneys' fees,

costs, and expenses incurred in bringing her claim, and such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to trial by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests the trial be held in Kansas City, Missouri.

## CIVIL COVER SHEET

A Civil Cover Sheet is attached to Plaintiff's original Complaint and is on the docket at ECF #1-1.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

*/s/ Brad Thoenen*
Brad Thoenen           MO 59778
bthoenen@hkm.com
John Ziegelmeyer       MO 59042
jziegelmeyer@hkm.com
Kevin Todd             MO 73048
ktodd@hkm.com
1501 Westport Road
Kansas City, MO 64111
Phone and Fax: (816) 875-9339